627 So.2d 283 (1993)
MISSISSIPPI COMMISSION ON JUDICIAL PERFORMANCE
v.
Mark ISHEE, Justice Court Judge.
No. 92-CC-499.
Supreme Court of Mississippi.
September 2, 1993.
Rehearing Denied December 23, 1993.
*284 Luther T. Brantley, III, Jackson, for appellant.
Bobby L. Shoemaker, Bay Springs, for appellee.
En Banc.
JAMES L. ROBERTS, Jr., Justice.
This proceeding comes before this Court pursuant to the recommendation of the Mississippi *285 Commission on Judicial Performance, that Mark Ishee, a justice court judge in District Two of Jasper County, be issued a public reprimand and a $5,600.00 fine. The Commission found that Ishee intentionally and willfully violated Canon 7 A(3) of the Mississippi Code of Judicial Conduct. The Commission's recommendation is now before this Court for review pursuant to Rule 10 of the Rules of the Mississippi Commission on Judicial Performance. Feeling aggrieved of the Commission's findings, Ishee assigns as error the following:

I.
DID MARK A. ISHEE VIOLATE CANON 7A(3) OF THE MISSISSIPPI CODE OF JUDICIAL CONDUCT BY RUNNING FOR THE OFFICE OF CIRCUIT COURT CLERK OF JASPER COUNTY, MISSISSIPPI, WHILE SERVING AS JASPER COUNTY JUSTICE COURT JUDGE?

II.
DID MARK A. ISHEE'S REMAINING IN OFFICE CONSTITUTE WILLFUL MISCONDUCT IN OFFICE AND CONDUCT PREJUDICIAL TO THE ADMINISTRATION OF JUSTICE WHICH BROUGHT THE JUDICIAL OFFICE INTO DISREPUTE SO THAT MULTIPLE SANCTIONS WERE ALLOWABLE?

III.
WERE MARK A. ISHEE'S ACTIONS WILLFUL AND INTENTIONAL AS TO JUSTIFY A FINE OF $5,600.00?
Finding no merit to Ishee's assignment of errors, we hereby affirm the Commission's recommendation of a public reprimand and $5,600.00 fine.

STATEMENT OF FACTS
Mark A. Ishee served three terms (12 years) as Justice Court Justice in Jasper County, Mississippi. On January 2, 1991, Ishee qualified to run for the office of Circuit Clerk of Jasper County, Mississippi. Based upon a complaint received by the Mississippi Commission on Judicial Performance, the Commission issued a letter dated June 14, 1991, to advise all justice court judges, including Ishee, that a judge must resign his or her judicial office in order to run for a non-judicial office, pursuant to Canon 7 A(3), or be subject to a formal complaint and the possibility of a recommendation of suspension pending the outcome of the formal complaint. The Commission also requested that they be notified by July 5, 1991, of the justice court judges' resignation or intent to resign. The letter was signed by William M. Bost, Jr., chairman of the Mississippi Commission on Judicial Performance. Approximately 18 justice court judges notified the Commission they were running for non-judicial office. All but two of those judges had resigned by the Commission's August meeting. The Commission issued formal complaints against the two judges. One resigned shortly thereafter.
Ishee did not resign his judicial office.[1] On August 9, 1991, in accordance with the Rules of the Commission, the Commission filed a formal complaint against Ishee. The complaint charged that Ishee qualified to run for the non-judicial office of circuit clerk without resigning from the judicial office of justice court judge, in violation of Canon 7 A(3).
On August 29, 1991, a hearing was held to allow Ishee to show cause why the Commission should not recommend an interim suspension to this Court. At its meeting on September 13, 1991, the Commission did in fact recommend suspension and petitioned this Court for an interim suspension of Ishee. This Court did not rule on the matter.
Ishee answered on September 9, 1991, asserting that the office of circuit clerk is a judicial office; therefore, his failure to resign did not violate Canon 7 A(3) of the Code of Judicial Conduct of Mississippi Judges.
The Judicial Performance Committee held a hearing on the merits of the complaint on *286 March 30, 1992, before a three member panel. The Committee found that there was willful and intentional misconduct on the part of Ishee and recommended that he receive a public reprimand. The Committee was split over the issue of the imposition of a fine, and therefore could not make a recommendation. The Committee did recommend that all costs of the proceedings should be assessed to Ishee. Ishee filed Objections to the Findings of Facts and Recommendation of the Committee on May 6, 1992.
The full Commission issued a Findings of Facts and Recommendation on May 8, 1992. The finding of the Commission was:
IT IS, THEREFORE, THE FINDING OF THE COMMISSION that Judge Mark Ishee intentionally and willfully violated Canon 7A(3) of the Mississippi Code of Judicial Conduct, after being given written notice by the Commission of said violation as well as a copy of a written Attorney General's Opinion interpreting said Canon to be a mandatory requirement, and that said conduct constitutes willful misconduct in office and conduct prejudicial to the administration of justice which brings the judicial office into disrepute pursuant to Section 177A of the Mississippi Constitution of 1890, as amended.
The Commission's Recommendation was:
Section 177A of the Mississippi Constitution provides that upon recommendation of the Commission, a judge may be removed, suspended, fined, publicly censured or publicly reprimanded by the Supreme Court. To so sanction a judge, the Court must find one or more enumerated grounds for sanction, including willful misconduct in office and conduct prejudicial to the administration of the justice which brings the judicial office into disrepute. The Commission finds that the Respondent's conduct herein constitutes each of the above enumerated grounds and merits sanctions.
The Mississippi Commission on Judicial Performance recommends to the Mississippi Supreme Court that the Respondent, Mark Ishee, be publicly reprimanded and fined $5,600.00 pursuant to Section 177A of the Mississippi Constitution. The fine is based upon the salary[2] which the Respondent received for July, August, September, and October, 1991, which represents the time after the Respondent was given notice of the Commission's position and after being given an opportunity to resign, through the election, after which the Respondent was no longer a candidate for non-judicial office and could have been reappointed justice court judge by the Jasper County Board of Supervisors. The Commission further recommends that the Respondent be assessed the costs of this proceeding.
After this finding by the Commission, Ishee perfected his appeal to this Court.

DISCUSSION OF THE ISSUES
This Court conducts de novo review of judicial misconduct proceedings, giving great deference to the findings and recommendations of the Mississippi Judicial Performance Commission. The findings of the Commission must be based upon clear and convincing evidence. Mississippi Comm. on Judicial Performance v. Gunn, 614 So.2d 387 (1993) (citing Mississippi Judicial Performance Comm. v. Peyton, 555 So.2d 1036 (Miss. 1990); In re Collins, 524 So.2d 553 (Miss. 1987); In re Inquiry Concerning Garner, 466 So.2d 884 (Miss. 1985); In re Brown, 458 So.2d 681 (Miss. 1984)). This Court is not bound by the recommendations of the Commission, and may impose additional sanctions as it sees fit. Gunn, supra; Peyton, supra; Collins, supra. The sanctions which can be imposed by this Court for judicial misconduct include removal from office, suspension from office, a fine, or a public reprimand. Mississippi Judicial Performance Comm. v. Hopkins, 590 So.2d 857, 862 (Miss. 1991). See also Miss. Const.Art. VI, § 177A (1890).

I.
MARK A. ISHEE DID VIOLATE CANON 7 A(3) OF THE MISSISSIPPI CODE OF JUDICIAL CONDUCT BY RUNNING FOR THE OFFICE OF CIRCUIT *287 CLERK OF JASPER COUNTY, MISSISSIPPI, WHILE SERVING AS JASPER COUNTY JUSTICE COURT JUDGE
Ishee contends that he was not in violation of Canon 7 A(3) of the Code of Judicial Conduct of Mississippi Judges[3], which provides:
A judge should resign his office when he becomes a candidate either in a party primary or in a general election for a non-judicial office, except that he may continue to hold his judicial office while being a candidate for election to or serving as a delegate in a state constitutional convention, if he is otherwise permitted by law to do so.
At this time, there are no Mississippi cases which construe Canon 7 A(3). However, other courts have interpreted Canon 7 A(3) or a similar provision to require a judge to resign when he or she becomes a candidate for a non-judicial office. See, e.g., Morial v. Judiciary Commission of Louisiana, 565 F.2d 295, 299-303 (5th Cir.1977) (Fay, J., dissenting); Adams v. Supreme Court of Pennsylvania, 502 F. Supp. 1282, 1292 (M.D.Pa. 1980) (rule 15(E) of the Governing Standards of Conduct for District Justices requiring a district judge to resign his office when he becomes a candidate upheld); Committee for an Effective Judiciary v. State, 209 Mont. 105, 679 P.2d 1223 (1984); In re Inquiry Concerning a Judge No. 591, 250 Ga. 796, 300 S.E.2d 807 (1983). This "resign-to-run" requirement has been upheld as reasonable, and there are judges in other jurisdictions who have been sanctioned in one form or another for violation of the requirement. See, e.g., Feltz v. Crabtree, 179 W. Va. 524, 370 S.E.2d 619 (1988).
Ishee contends that the language of Canon 7 A(3) is not mandatory because it says "should," rather than "the mandatory terminology of `shall.'" Ishee cites no authority for his distinction between "shall" and "should."
The American Heritage Dictionary of the English Language (1981) defines "should" as:
the past tense of shall, but more often used as an auxiliary verb expressing degrees of the present and future and various shades of attendant meaning indicating: 1. [o]bligation; duty; necessity... .
Id. at 1199. The fact that "should" is the past tense of "shall" means that the two words are basically the same, especially with regard to their "mandatory" nature. Furthermore, the first listed definition of "should" states that the word connotes a requirement, not an option. Ishee fails to convince us that Canon 7 A(3) does not mandate resignation by a judge who chooses to stand for election to a non-judicial office.
Ishee also alleges that prior to his receipt of the letter of June 14, 1991, notifying him of the enforcement of Canon 7 A(3), he spoke with a justice court judge, who served as a member of the Mississippi Commission on Judicial Performance, and who was also to become a member of the Committee who heard Ishee's case. Ishee alleged that this Commission member told him that running for the office of circuit clerk while serving as a justice court judge did not violate Canon 7 A(3).[4] At the hearing on the merits, the record shows that Ishee alleged that he spoke with someone on the Commission, but did not state who that person was:
Judge Ishee, as he testified at the August 29, 1991, hearing that also he had a discussion with a member of the Commission and was further led to believe that the circuit clerk's office was a judicial office rather than a nonjudicial office and, basically, reaffirmed his position that he was not required to resign.
There is insufficient evidence in the record that the Commission member so advised Ishee on this matter. Suffice it to say that if such conduct did occur, it should not have. On the facts and record before us, this Court is unable to further pursue or address this point.
*288 Ishee further contends that he was not informed that the office of circuit clerk was a non-judicial office by the letter of June 14, 1991, from the Judicial Performance Commission. To support his position that the office of circuit clerk is a judicial office, Ishee cites Article 6, § 168, Miss. Const., which provides for the office of the circuit clerk under the judicial branch, thereby rendering it a judicial office. He further posits that Haley v. State, 108 Miss. 899, 67 So. 498 (1915), solidifies this reasoning. In Haley, a case decided long before the promulgation of the Judicial Code of Ethics, this Court stated that Article 6, § 170, Miss. Const. made the board of supervisors a part of the judicial department of the state. Ishee reasons that since both the board of supervisors and the office of circuit clerk are within the judiciary section of the Mississippi Constitution, and the Mississippi Judicial Performance Commission has never exercised any authority over the supervisors, and further, if the board of supervisors, pursuant to Haley, is to be considered a judicial office, then so must the office of circuit clerk.
In Feltz v. Crabtree, 179 W. Va. 524, 370 S.E.2d 619 (1988), the West Virginia Supreme Court of Appeals held that the office of circuit clerk was not a judicial office. This case arose in much the same way as the case sub judice. A magistrate received notice that he was required to resign his position in order to seek the office of circuit clerk. The magistrate was removed from the payroll pursuant to that directive. By a petition for writ of mandamus, the magistrate asked to be reinstated. Canon 7 A(3) of the Judicial Code of Ethics in West Virginia is identical to our Canon 7 A(3). Furthermore, this was a case of first impression defining the term "judicial office." Article VIII, W. Va. Const. created the office of the circuit clerk within the judicial system. Feltz concluded that the office of circuit clerk is not a "judicial office" as used in Art. VIII, § 7, W. Va. Const. and Canon 7 A(3).
While we do not intend to disturb the holding in Haley, today we announce that for purposes of Canon 7 A(3) neither the board of supervisors, nor the office of the circuit clerk is judicial for purposes of Canon 7 A(3). A sitting judge must resign his or her position to run for any office other than another judgeship. As Ishee was notified by the Commission of their decision to enforce Canon 7 A(3), he was required to comply, as did the other seventeen justice court judges so notified.
Yet another allegation Ishee makes is that the Judicial Performance Commission failed to uniformly enforce Canon 7 A(3). He believes that the Commission selected arbitrarily to enforce the rule upon him. Ishee exhaustively listed all the judges that he believed "got away with" not following the Canon. During the hearing on the merits, Judge Coleman said it best:
I understand your argument, [that there are other judges who violated the Canon who were not brought before the Commission] and you have restated it several times. But I'm not here to go over whether one person caught speeding should be found not guilty of the law because three others passed by and weren't caught. That's not the issue... .
Ishee cites no authority for his contention that if someone else violates the law and is not prosecuted, then the one who is prosecuted is not guilty.
The Commission correctly found that Ishee violated Canon 7 A(3) of the Mississippi Code of Judicial Conduct.

II.
THE COMMISSION CORRECTLY FOUND THAT ISHEE'S CONDUCT WAS WILLFUL AND INTENTIONAL, AND THAT SUCH MISCONDUCT WAS PREJUDICIAL TO THE ADMINISTRATION OF JUSTICE THEREBY ALLOWING FOR MULTIPLE SANCTIONS IN THE FORM OF A PUBLIC REPRIMAND AND A FINE
Article 6, § 177A, Miss. Const. (1890), states, in pertinent part:
On recommendation of the commission on judicial performance, the supreme court may remove from office, suspend, fine or publicly censure or reprimand any justice or judge of this state for: . .. (b) willful misconduct in office; ... (e) conduct prejudicial *289 to the administration of justice which brings the judicial office into disrepute... .
This Court has held that if the complaints against a judge constitute more than one of the proscribed categories pursuant to our state constitution, multiple sanctions may be imposed. In re Branan, 419 So.2d 145, 147 (1982) (justice court judge publicly reprimanded and fined $1,000.00). The Commission found that Ishee's actions constituted willful misconduct and were prejudicial to the administration of justice, which brings the judicial office into disrepute.
This Court has explained that:
Willful misconduct in office is the improper or wrongful use of power of his office by a judge acting intentionally or with gross unconcern for his conduct and generally in bad faith. It involves more than an error of judgment or a mere lack of diligence. Necessarily, the term would encompass conduct involving moral turpitude, dishonesty, or corruption, and also any knowing misuse of the office, whatever the motive. However, these elements are not necessary to a finding of bad faith. A specific intent to use the powers of the judicial office to accomplish a purpose which the judge knew or should have known was beyond the legitimate exercise of his authority constitutes bad faith... .
Willful misconduct in office of necessity is conduct prejudicial to the administration of justice that brings the judicial office into disrepute. However, a judge may also, through negligence or ignorance not amounting to bad faith, behave in a manner prejudicial to the administration of justice so as to bring the judicial office into disrepute.
In re Quick, 553 So.2d 522, 524 (Miss. 1989) (quoting In re Anderson, 412 So.2d 743, 745 (Miss. 1982)). See also Gunn, supra, 614 So.2d at 390.
Since most of the citizens of this state have their primary contact with the judicial system at the level of the justice court, it is important for a justice court judge to maintain the integrity of the judicial office that he or she holds. Gunn, 614 So.2d at 389; Hopkins, 590 So.2d at 862.
Ishee contends that by refusing to resign from his judicial position he is subject only to a reprimand because his conduct at most only violated one of the provisions of § 177A, and therefore, multiple sanctions against him are improper. Interestingly, he does not inform us which of one of the provisions he has violated.

A.

PUBLIC REPRIMAND
This Court has announced certain mitigating factors that will be considered in determining whether a reprimand should be public. These include length and character of the judge's public service; positive contributions made by the judge to the courts and the community; lack of prior judicial precedent on the incident in issue; commitment to fairness and innovative procedural form on the part of the judge; the magnitude of the offense; the number of persons affected; and whether moral turpitude was involved. Mississippi Judicial Performance Comm. v. Walker, 565 So.2d 1117, 1125 (Miss. 1990) (citing In re Inquiry Concerning Baker, 535 So.2d 47, 54 (Miss. 1988)).
The record reveals that Ishee served as a justice court judge for 12 years. The record is silent as to his character, any contributions he made to the community, and his commitment to fairness. There are no Mississippi cases directly on point. However, a survey of other jurisdictions, and most importantly, the letter from the Commission directing Ishee to comply with Canon 7, point to willful misconduct and conduct prejudicial to the administration of justice which brings the judicial office into disrepute. Regarding the number of persons affected by Ishee's willful conduct, that number would include all the taxpayers whose tax dollars went to pay Ishee's salary during the time he continued to hold office in violation of Canon 7 A(3). The magnitude of the offense includes having an opportunity to misuse his position to forward his efforts to be elected to another office. There are no allegations that Ishee's violation involved moral turpitude.
*290 We find sufficient reason for Ishee to be publicly reprimanded for his refusal to resign from office during the pendency of his campaign for a non-judical office.

B.

FINE
Ishee posits that his actions were not willful and intentional for all the reasons discussed above. He further contends that the fine imposed by the Commission was exorbitant when compared with prior recommendations of the Commission. Ishee lists eight cases to support his position.[5]
This is the Commission's first recommendation for sanctions for a violation of Canon 7 A(3). Although the fine is a large one, it has a rational computational basis in the salary received by Ishee during the period of time he was required to resign and did not. Furthermore, violation of Canon 7 A(3) is a serious one. For a judge to run for a non-judicial office while still sitting on the bench is the height of impropriety and would tend to make all decisions issued during that time suspect. Moreover, Ishee was not without notice on this matter. He was instructed what the consequences of his failure to resign would be. Unlike the seventeen other similarly-situated judges, Ishee decided not to resign, and now must face the foretold consequences.
Therefore, we find that the proposed $5,600.00 fine is reasonable.
We recognize that Jasper County voters have elected Ishee to public office at least four times, which may be considered as an affirmation of good public service on his part. That record, as good as it may be, is not the issue presently before the Court, nor does it absolve Ishee of the serious violation he has committed.
This Court feels that if Ishee had not been elected to the office of circuit clerk, and had continued as a sitting justice court judge, we would have been compelled to remove him from office for his wrong-doing.
Finding the facts to be uncontroverted, and the sanctions reasonable and consistent with prior case law, we hereby affirm the Commission's recommendation of a public reprimand and the imposition of a $5,600.00 fine. This Court recommends that the reprimand be read in open Circuit Court in Jasper County.
MARK ISHEE IS HEREBY PUBLICLY REPRIMANDED AND FINED $5,600.00.
HAWKINS, C.J., PRATHER, P.J., and SULLIVAN and SMITH, JJ., concur.
McRAE, J., dissents with separate opinion joined by DAN LEE, P.J., and PITTMAN and BANKS, JJ.
McRAE, Justice, dissenting:
For the first time, the majority today proclaims that for purposes of Canon 7(A)3, the office of circuit clerk is not a "judicial office." It therefore affirms the public reprimand and $5,600.00 fine imposed against Mark Ishee by the Mississippi Commission on Judicial Performance. Because Ishee could not have anticipated that this Court would so rule in a case of first impression, the punishment is disproportionate to the offense. Accordingly, I dissent.
In June, 1991, the Commission notified all justices of the peace that prior to running for any non-judicial office, a judge must resign his judicial office. Ishee, who had qualified to run for the office of circuit clerk, contends that he had been advised by a member of the Commission that the post he sought was a judicial office. Therefore, in apparent disagreement *291 with the Commission's directive, he did not resign from his justice court position. The Commission, meanwhile, did not seek to enjoin Ishee, nor did it seek an advisory opinion from this Court.
The penalty now imposed on Ishee for this newly-announced infraction is unduly harsh  a public reprimand and a $5,600.00 fine. The majority goes one step further, suggesting that "if Ishee had not been elected to the office of circuit clerk, and had continued as a sitting justice court judge, we would have been compelled to remove him from office for his wrongdoing." Considering that this is a case of first impression, these are strong words. To determine whether or not the position of circuit clerk was a "judicial office," the majority turned to the law of other jurisdictions for guidance in making their decision. Where common sense might lead one to presume that a court clerk is part of the judiciary system, how could a lay person sitting as a justice court judge have anticipated this construction of Canon 7 (A)3?
Imposition of both a fine and a public reprimand in this case is inconsistent with the sanctions meted out in other instances of misconduct by justices of the peace. See e.g., Mississippi Judicial Performance Commission v. A Justice Court Judge, 580 So.2d 1259, 1264 (Miss. 1991) (private reprimand for "first time offender"). This is particularly troublesome when considering that this is a case of first impression. Moreover, Ishee should not be punished for running for political office and exercising his constitutional right to disagree with the Commission. He could only access the proper forum to challenge the Commission's directive by running for the circuit clerk's post without resigning from his justice court position.
Even with a crystal ball, Ishee could not have foreseen this Court's finding that the office of circuit clerk is not a judicial office. While in future cases, a justice court judge's refusal to resign before running for a non-judicial office may warrant a public reprimand or a fine, Ishee, at best, should be subject only to a private reprimand. Accordingly, I dissent.
DAN M. LEE, P.J., and PITTMAN and BANKS, JJ., join this opinion.
NOTES
[1] Ishee served out his term as justice court judge and on January 6, 1992, took office as circuit clerk of Jasper County, Mississippi.
[2] Ishee's salary as a justice court judge for Jasper County, Mississippi for the calendar year 1991 was $16,800.00, pursuant to Miss. Code Ann. § 25-3-36 (Supp. 1991).
[3] The Code of Judicial Conduct was adopted by the Mississippi Conference of Judges October 25, 1974. Canon 7 A(3), as well as most of the Judicial Code, is identical to the American Bar Association's Model Code of Judicial Conduct.
[4] Ishee named the Commission member for the first time in his Brief. There would be no merit in naming that Commission member at this time.
[5] Ishee listed the following cases: In re Branan, 419 So.2d 145 (Miss. 1982) (public reprimand and $1,000.00 fine for willful and persistent failure to perform judicial duties); In re Lambert, 421 So.2d 1023 (Miss. 1982) (multiple violations of the Judicial Canons with only a $2,000.00 fine imposed); In re Anderson, 451 So.2d 232 (Miss. 1984) ($500.00 fine imposed for multiple violations of the canons); In re Stewart, 490 So.2d 882 (Miss. 1986) (removal from office for converting money and falsifying court records); In re Hearn, 515 So.2d 1225 (Miss. 1987) (public reprimand and $500.00 fine); In re Chambliss, 516 So.2d 506 (Miss. 1987) (public reprimand and $1,000.00 fine); In re Bailey, 541 So.2d 1036 (Miss. 1989) (judicial misconduct found, but no malice; public reprimand but no fine); and In re Coleman, 553 So.2d 513 (Miss. 1989) (removed from office for conversion of fine money).