GIPSON *v.* MANER, JUDGE.
5-757 and 5-758 Consolidated
GIPSON *v.* YOUNG, COUNTY TREASURER.

5-827                                     287 S. W. 2d 467

Opinion delivered February 13, 1956.

[Rehearing denied March 19, 1956.]

*Kenneth C. Coffelt,* for appellant.

*H. B. Means,* for appellee.

*Kenneth C. Coffelt,* for appellant.

*H. B. Means* and *J. M. Smallwood,* for appellee.

*Amici Curiae*: Harry P. Daily; L. Weems Trussell; Arnold M. Adams; Emery D. Curlee; Fred M. Pickens; W. D. Murphy, Jr.; Tompkins, McKenzie & McRae; Shaver & Shaver; Ned Stewart; and Jay W. Dickey.

GEORGE ROSE SMITH, J.   The question in these cases is whether Acts 109 and 142 of 1955 are contrary to § 4 of Amendment 37 to the state constitution, which places a limitation upon the salary and expenses of circuit judges and chancellors.

It was provided by Amendment 15, approved in 1928, that the annual salary of these judges should be $3,600 each. Amendment 15 was superseded in 1946 by Amendment 37. Section 4 of the amendment now in force reads: "The General Assembly of Arkansas shall by law determine the amount and method of payment of salaries and expenses of Circuit Judges and Chancellors of the various Circuit and Chancery districts; provided that the salary and expenses of any Circuit Judge or Chancellor shall not be less than $4,800.00, nor more than $7,200.00 per year." At its first session after the adoption of the present amendment the legislature fixed the annual salary of these officers at the maximum figure of $7,200.00, and that amount is now being paid to each of them. Ark. Stats., 1947, § 22-348.

These cases involve the seventh judicial circuit, of which the appellee, Ernest Maner, is judge. By Act 109 of 1955 the legislature found that "the judge of the Seventh Judicial Circuit must provide the costs of travel and other costs incident to the holding of court in such district, and that such costs reduce the income of such judge to approximately $3,600 annually—a sum much less than that received by other public officials who fill less responsible positions." The Act then directs the judge to relieve the burden of current business by holding pre-trial conferences and adjourned days of court. It is next ascertained and declared that the expenses occasioned by duties imposed since the adoption of Amendment 37 amount to $200 a month, which sum is declared to be a necessary expense of the counties within the circuit. The Act directs the counties to pay to the circuit judge the sum of $200 monthly, of which $85 is to be paid by Hot Spring County, a like amount by Saline County, and $30 by Grant County.

The other statute in question, Act 142 of 1955, is of more general application. It amends Ark. Stats., § 22-349, by authorizing any circuit judge or chancellor to determine mileage and other expense occasioned by duties imposed since the adoption of Amendment 37 and

to direct that such expense be paid by the counties comprising the circuit or district.

On February 26, 1955, under the authority of Act 109, Judge Maner entered a circuit court order directing Saline County to pay $85 monthly to the circuit judge for necessary expenses. Two days later the appellant, as a citizen and taxpayer, filed his notice of appeal from that order; that appeal has been docketed here as Case No. 5-757. Later on Judge Maner set aside the brief order of February 26 and entered a more detailed order by which it was found that expenses attributable to duties imposed after the adoption of Amendment 37 amounted to $200 a month, which was apportioned among the three counties in the ratio specified by Act 109. Gipson's appeal from that order is Case No. 5-758.

In addition to appealing from the above orders, neither of which seems to have been preceded by the taking of testimony, Gipson filed a separate suit in the chancery court to enjoin the county treasurer from making the payments in question and from providing a telephone for the circuit judge's chambers. Trial of that case resulted in a decree denying all relief, it having been stipulated that the county should not pay for personal long-distance calls made by Judge Maner or anyone else. Gipson's appeal from that decree is Case No. 5-827.

The appellee in the first two cases has filed a motion to dismiss the appeals, upon the ground that there was no litigation in the trial court from which an appeal could be taken. This position is not well taken, for if the orders direct an unconstitutional expenditure of public funds they can be set aside either upon appeal or by certiorari. We need not determine which method of review is technically correct, for the real questions at issue are equally well presented by the third case and must in any event be decided. The motion to dismiss is therefore denied.

The appellant's objection to the county's furnishing a telephone for the judge's chambers can be answered quickly. This outlay does not constitute a per-

sonal expense for which the judge is being reimbursed; it is a payment made to the telephone company for a service reasonably necessary to the transaction of the court's official business. No one doubts the county's authority to provide a courtroom and judge's chambers, nor its duty to supply furniture, heat, light, stationery, and other ordinary requirements for the operation of a public office. Not long ago we approved the installation of air-conditioning as a proper county expenditure. *McArthur* v. *Campbell*, 225 Ark. 175, 280 S. W. 2d 221. There is no sound basis for drawing a distinction between telephone service and the many other facilities that are regarded as necessary to the conduct of a modern business office.

With respect to the principal question a number of able briefs have been filed in support of the validity of this legislation. We need not enumerate all the arguments that are advanced. The main contention is that the legislature is free to provide reimbursement for expenses incident to duties imposed since the adoption of Amendment 37. Most of the proof in the chancery case is directed to this issue. It is shown without dispute that the amount of travel necessary to the performance of a circuit judge's duties has been greatly increased by the enactment of laws pertaining to pre-trial conferences, adjourned days of court, etc. There is no reason to doubt the accuracy of the legislature's conclusion that as much as half of the salary authorized for circuit judges and chancellors may be consumed by hotel and travel expense. We know without proof that a trial judge's conscientious discharge of the heavy responsibilities placed upon him by law involves financial hardships of which the general public is wholly unaware.

The question, however, is one not of expediency but of constitutional law. We find it impossible to hold that Acts 109 and 142 are not in direct conflict with the plain language of the constitution. It makes little difference by which principle of constitutional interpretation the issue is tested; in each instance the result is the same.

It is a fundamental rule that the words of the constitution should ordinarily be given their obvious and natural meaning. *State ex rel. Norwood* v. *New York Life Ins. Co.,* 119 Ark. 314, 171 S. W. 871, 173 S. W. 1099. Amendment 37 bluntly declares that ''the salary and expenses of any Circuit Judge or Chancellor shall not be less than $4,800.00, nor more than $7,200.00 per year.'' This language is simple, direct, and unequivocal. It contains no hint that the limitation applies only to the expense of duties currently imposed. A statement as positive and explicit as this one is leaves no area of doubt that might call into play the exercise of judicial interpretation. If Amendment 37 does not have the effect of fixing a $7,200 maximum for salary and expenses, then, as far as we can see, the words have no meaning at all.

The basic spirit of the constitution is to be considered along with its literal meaning and may even prevail where a conflict exists. *Bailey, Lieutenant Governor,* v. *Abington,* 201 Ark. 1072, 148 S. W. 2d 176, 149 S. W. 2d 573. In this case there is no discernible conflict between the letter and the spirit. The broad purpose of § 4 of Amendment 37 was undoubtedly to set a definite limit, expressed in dollars and cents, upon the salary and expenses that can lawfully be paid to circuit judges and chancellors. It is perfectly clear that this purpose would be defeated if the present acts were upheld. The travel expense attributable to duties imposed since 1946 cannot be measured in dollars and cents or even be estimated with any degree of accuracy. If it should be held that Judge Maner's present additional duties entitle him to an allowance of $200 there would obviously be no limit to the further increases that with equal plausibility would have to be sustained in the future. The limitation that was intended by the people would be as effectively destroyed as if the amendment had not been adopted.

Especially applicable to this case is the rule that in determining the intention of the framers of a constitutional amendment the court must keep in mind the situation that the amendment was meant to remedy. *Matheny*

v. *Independence County,* 169 Ark. 925, 277 S. W. 22. By this test there can remain no doubt that one of the purposes of Amendment 37 was the elimination of expense allowances such as that now in dispute.

The original constitution, Art. 7, § 18, invested the legislature with almost unlimited authority to fix the compensation of circuit judges, the only restriction being that a judge's pay could not be diminished during his term of office. While that provision was in force many acts were passed to require the various counties to contribute to the expenses of circuit judges and chancellors. Amendment 15 referred only to the annual salaries of judges, not to their expenses, and the legislature continued to authorize the payment of expenses that were undoubtedly incurred. Some twenty-five of these special acts are cited in the index to the 1947 Annotated Statutes, Vol. 8, pp. 1302-04. It was with this background of experience that the constitution was amended to refer expressly to both salary and expenses. We are compelled to believe that the deliberate change in wording was intended to terminate a practice that would be revived if the present statutes were sustained.

We have studied carefully the many cases cited in the briefs, but none is applicable to this situation. More nearly in point than any other is the holding in *Ashton* v. *Ferguson,* 164 Ark. 254, 261 S. W. 624. There the legislature attempted to authorize an allowance of $100 to each of its members, despite a constitutional amendment strictly limiting the legislators' salary and mileage expense. The court unanimously held that the allowance was contrary to the constitution and void. A different rule cannot be applied to the judiciary.

Reversed.